IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COREY ALAN BENNETT,<br>    TDOC #509793 | )<br>)<br>) |
|     Plaintiff, | )<br>) |
| v. | )   Case No. 3:15-cv-00729<br>) |
| CAPTAIN DARLENE SCOTT, et al., | )   JUDGE CAMPBELL<br>) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Corey Alan Bennett, an inmate at Riverbend Maximum Security Institution in Nashville, Tennessee,[1] brings this *pro se* action under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff has also submitted an application to proceed *in forma pauperis* (IFP). (ECF No. 2.) The complaint is before the Court for a determination of whether it warrants filing IFP in light of the applicable bar of 28 U.S.C. § 1915(g). The Court concludes that it does not.

The effect of the Prison Litigation Reform Act of 1995 ("PLRA") was to implement "constraints designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 562 U.S. 521, 535 (2011). One of the particular constraints in the PLRA serves to bar prisoners from bringing a civil action or appealing a judgment in a civil action *in forma pauperis*,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner plaintiff who falls within the scope of § 1915(g),

---

[1] Plaintiff filed this action while he was housed at Lois M. Deberry Special Needs Facility, and it relates to conditions at that facility, but he has since been transferred to Riverbend.

while not precluded from filing a civil lawsuit in federal court, may not do so without prepayment of the filing fee unless he is under imminent danger of serious physical injury. *Wilson v. Yaklich*, 148 F.3d 596, 603–04 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999).

Although in his current complaint he acknowledges having brought only "29 separate lawsuits filed across TN" (ECF No. 1, at 5), Plaintiff has actually initiated at least 34 lawsuits in this court alone. *See* Appendix 1. Statewide, he has filed at least 72 federal lawsuits, and 16 appeals to the United States Court of Appeals for the Sixth Circuit. *See* Appendix 2. Plaintiff's MANY previous federal civil actions that were dismissed either as being frivolous or for failure to state a claim include: *Bennett v. Isaacs*, No. 3:13-cv-299 (E.D. Tenn. Oct. 10, 2013) (dismissing as frivolous and for failure to state a claim); *Bennett v. Sexton*, No. 3:13-cv-494 (E.D. Tenn. October 15, 2013) (dismissing as frivolous and for failure to state a claim); and *Bennett v. Sexton*, No. 3:13-cv-538 (E.D. Tenn. October 15, 2013) (dismissing as frivolous and for failure to state a claim). Plaintiff was informed by the United States District Court for the Eastern District of Tennessee no later than November 2013 that he was subject to the PLRA's 3-strikes provision, *see Bennett v. Jones*, No. 3:13-cv-626 (E.D. Tenn. Nov. 12, 2013), and since then the Western District and this District have also held him subject to that bar. *See, e.g., Bennett v. Roberts*, No. 1:14-cv-01113 (W.D. Tenn. May 21, 2014); *Bennett v. Carpenter*, No. 3:14-cv-1691 (M.D. Tenn. August 22, 2014).

Plaintiff has been undeterred by the application of the PLRA. Since being held subject to the 3-strikes bar in November 2013, he has filed 80 more lawsuits and appeals.[2] In this Court alone, he has filed 26 civil rights lawsuits since this Court's August 22, 2014 order holding him subject to the

---

[2] The Court acknowledges that Plaintiff's lawsuit totals include several petitions for the writ of *habeas corpus*, which are not subject to the PLRA's 3-strikes bar. *See Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Those actions, however, are a small minority of his total volume, and the extent to which Plaintiff files repetitive habeas petitions further underscores the abusiveness of his filings and the burden he is placing on the federal courts in Tennessee.

3-strikes bar. *See* Appendix 3. In many of those complaints, including the one currently before the Court, Plaintiff intentionally crafts his allegations to overcome the bar by alleging imminent danger and lecturing the Court about its duty to grant him IFP status and order service:

> My life is clearly in imminent danger and the Court must accept these allegations as true and grant permission to proceed in Forma Pauperis. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). That is the Court <u>Cannot</u> decline pauper status simply because it finds the allegations in the complaint of imminent danger to be improbable or unlikely. Therefore this Court should grant to proceed Forma pauperis and order Clerk to issue plaintiff 20 service packets so each defendant can be served.

(ECF No. 1, at 8–9); *see also, e.g., Bennett v. Westbrooks*, No. 3:15-cv-505 (M.D. Tenn. Complaint filed April 30, 2015, ECF No. 1, at 8–9) (citing *Denton* and asserting "My life is clearly under imminent danger. . . . the Court <u>must</u> accept as true the Allegations in this Complaint unless they are clearly irrational or wholly incredible. That is, the court CANNOT Decline pauper status simply because it finds the allegations of imminent danger to be improbable or unlikely."); *Bennett v. Greggory*, No. 3:15-cv-493 (M.D. Tenn. Complaint filed April 27, 2015, ECF No. 1, at 7) (citing *Denton* and instructing "In this Case the Supreme Court held that the Court Cannot decline Forma Pauperis just because it finds the imminent Danger to be improbable or unlikely. Therefore at this state of the proceedings the Court must accept these allegations of imminent Danger as true and order Clerk to issue Service in this Case.").

In this present complaint, Plaintiff primarily complains about alleged facts that would not overcome the 3-strikes bar of § 1915(g): past beatings (including an allegation that he was beaten unconscious by 12 or more defendants including Tennessee Department of Correction Commissioner Derrick Schofield), retaliation, confiscation and destruction of property, and deprivation of clothing, toiletries and hygiene supplies. Even his claim that he is being medicated against his will asserts only that the medication is "altering [his] thinking," rather than posing any danger of serious physical injury. The only allegation that even touches upon a current danger to his well-being is the allegation

that he has "been deprived of clean water, food . . . for almost 48 hours now" and that his "health is deteriorating." (ECF No. 1, at 8, 11.)

The Court takes judicial notice that Plaintiff has repeatedly alleged for at least 9 months that various defendants other prisons were depriving him of food. *See, e.g., Bennett v. Smith*, No. 3:14-cv-1829 (M.D. Tenn. Complaint filed Sept. 12, 2014, ECF 1, at 4) ("I haven't ate but twice in 3 days."); *Bennett v. Vance*, No. 3:15-cv-190 (M.D. Tenn. Complaint filed Feb. 27, 2015, ECF 1, at 4) ("refused to feed me"); *Bennett v. Greggory*, No. 3:15-cv-493 (M.D. Tenn. Complaint filed April 27, 2015, ECF 1, at 7) ("the staff not feeding me is causing my health to deteriorate"). And yet even in the present complaint, Plaintiff does not allege any specific ill effects, such as weight loss, dehydration or illness, arising from the alleged deprivation of food and water. Several days after submitting this complaint, Plaintiff was alive and well enough to draft and file a motion (ECF No. 3) seeking 29 service packets in this case. Also since dating this complaint on June 20, 2015, Plaintiff has filed at least the following 11 documents in 7 other cases he has pending in this Court:

> Motion for Third Party Subpoena, *Bennett v. Rogers*, No. 3:15-cv-206 (M.D. Tenn. Motion filed July 7, 2015) (dated July 6, 2015);
>
> Motions to Order Clerk to Issue Service Packets, *Bennett v. Johnson*, No. 3:15-cv-240 (M.D. Tenn. Motions filed July 9, 2015) (dated July 7 and 8, 2015);
>
> Motion to Issue New Service Packet, *Bennett v. Carpenter*, No. 3:15-cv-266 (M.D. Tenn. Motion filed July 9, 2015) (dated July 7, 2015);
>
> Motion to Order Clerk to Issue Service Packet, *Bennett v. Parker*, No. 3:15-cv-354 (M.D. Tenn. Motion filed July 9, 2015) (dated July 8, 2015);
>
> Motions to Amend Docket Sheet/Complaint and to Order Clerk to Issue Service Packets, *Bennett v. Scholfield*, No. 3:15-cv-401 (M.D. Tenn. Motions filed July 7 and 9, 2015) (dated July 6 and 8, 2015);
>
> Motion for Extension of Time and Response in Opposition to Motion to Dismiss, *Bennett v. Greggory*, No. 3:15-cv-493 (M.D. Tenn. Motion and Response filed July 7 and 9, 2015) (dated July 6 and 9, 2015);
>
> Motion to Amend Complaint and Memorandum in Support, *Bennett v. Griffin*, No. 3:15-cv-

617 (M.D. Tenn. Motion and Memorandum filed July 9, 2015) (dated July 7, 2015).

Thus Plaintiff's conclusory allegation on June 20 that his "life is clearly in imminent danger" is both unsupported by specific facts in the complaint and contradicted by his own ongoing activities in this Court. Plaintiff is correct that federal courts may not reject complaints under the PLRA simply because they find the allegations improbable in the abstract. Yet the very case on which he relies reaffirms that the PLRA gives courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Factors a court may consider in making that determination include, but are not limited to, "judicially noticeable facts" that rebut the plaintiff's allegations. *Id.* at 32–33.

*Denton* addressed the standard to be employed in an initial review under 28 U.S.C. § 1915(d) of the complaint of a plaintiff who has been granted leave to proceed IFP. But there is no reason to assume that the standard should be less stringent for a § 1915(g) review of the complaint of an inmate – like Plaintiff – who is already subject to a 3-strikes bar due to his abusive litigation practices. As the United States Court of Appeals for the Third Circuit has explained:

> A court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit "factual claims of imminent danger that are 'clearly baseless,' *i.e.*, allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.'" *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir. 1998) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). The Supreme Court has directed that, in assessing a case under 28 U.S.C. § 1915, we are not required to accept without question the truth of the plaintiff's allegations. *See Denton*, 504 U.S. at 32. Rather, we may be guided by judicially noticeable facts in determining whether the allegations are baseless or wholly incredible. *See id.*

*Brown v. City Of Philadelphia*, 331 F. App'x 898, 900 (3d Cir. 2009) (affirming dismissal under § 1915(g) of complaint brought by inmate with "demonstrated [] pattern of abusing judicial process,"

as evidenced by more than 30 meritless lawsuits in a decade). While a plaintiff seeking to proceed under § 1915(g) "need not affirmatively prove" his allegations of imminent danger in his complaint, the court's review of his allegations is fairly "informed by its judicial experience and common sense." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (quoting *Tucker v. Pentrich*, 483 F. App'x 28, 30 (6th Cir. 2012) and *Taylor v. First Med. Mgmt*, 508 F. App'x 488, 492 (6th Cir. 2012)).

In conducting the instant review, therefore, the Court takes judicial notice of Plaintiff's egregious and ongoing abuse of the privilege of filing lawsuits without pre-payment of fees.[3] More specifically, the Court takes judicial notice of Plaintiff's repetitive and long-standing claims that he is not being provided with food or water, the lack of any alleged harm befalling him as a result of such alleged deprivation, and the fact that he continues to be sufficiently healthy to draft and file pleadings and motions days and weeks after alleging in this case that he was in imminent danger due to lack of food and water. In light of all of these facts, the Court finds Plaintiff's allegation of imminent danger in this case to be clearly baseless.

Accordingly, Plaintiff is barred by 28 U.S.C. § 1915(g) from proceeding *in forma pauperis*. The application to proceed as a pauper (ECF No. 2) is **DENIED**. Because Plaintiff has demonstrated through this and other filings that he is indigent, rather than granting Plaintiff 30 days within which to submit the $400 filing fee, the Court hereby **DISMISSES** this action for failure to submit the filing fee with the complaint. This dismissal is without prejudice to Plaintiff's ability to file a motion to alter or amend judgment accompanied by the full $400 filing fee within 28 days of entry of this Order.

---

[3]Plaintiff already owes this Court more than $8,000 in assessed filing fees, for which the Court has received $0.00 payment because of Plaintiff's lack of funds in his inmate trust account and prior debts. The assessment of fees that will never actually be paid is clearly not a deterrent to Plaintiff.

Pursuant to *In re Alea*, 286 F.3d 378, 381 (6th Cir. 2002), the entire $400 fee is hereby **ASSESSED**, as follows: the custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's inmate trust account; or (b) 20% of the average monthly balance in Plaintiff's inmate trust fund account for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $400 filing fee is paid in full. 28 U.S.C. § 1915(b)(2). All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the Warden of the Riverbend Maximum Security Institution to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement.

Plaintiff's motion (ECF No. 3) for service packets is **DENIED** as moot.

Entry of this Order shall constitute the judgment in this action. Any appeal from this Order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

It is so **ORDERED**.

_Todd Campbell_
Todd Campbell
United States District Judge